BRYAN CAVE LLP (No. 00145700)
Sean K. McElenney (No. 016987)
Gregory B. Iannelli (No. 026549)
Two North Central Avenue, Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
skmcelenney@bryancave.com
gregory.iannelli@bryancave.com

Attorneys for Defendants Bank of America, N.A.,
individually and as successor by merger to BAC
Home Loans Servicing, LP and Bryan Cave LLP

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith M. Rich; Vincent P. Vitale,<br><br>Plaintiffs,<br><br>vs.<br><br>Bank of America, N.A., a national Bank and Bank of America, N.A., successor in interest to BAC Home Loans Servicing, LP, et al.,<br><br>Defendants. | No. 2:11-cv-00511-DLR<br><br>Hon. Douglas L. Rayes<br><br>**MOTION FOR ATTORNEYS' FEES, BY DEFENDANT BANK OF AMERICA, N.A.** |

Defendant Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP ("BANA"), respectfully moves for an award of attorneys' fees in the amount of $202,716.40. This case was an unfortunate waste of time and resources for both parties. BANA's goal was never to litigate and defeat Plaintiffs at trial. Rather, from the beginning of the case and nearly to the eve of the Court's summary judgment ruling, BANA attempted to resolve this case amicably with Plaintiffs. Its entreaties fell on deaf ears. Plaintiffs, who have not paid their loan for more than four years, and who have been living at their property for free that entire time due in no small part to the uncertainty they created through this litigation, refused to discuss a reasonable resolution. Instead, they opted for a "kitchen sink," scorched-earth litigation, and BANA had no choice but to

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   respond as efficiently and economically as possible.  Plaintiffs cannot expect to escape the
2   consequences of their choices.  Indeed, Mr. Vitale is a retired lawyer and he should know
3   better.  It would be a perverse result to hold that a borrower, especially an educated lawyer
4   borrower like Mr. Vitale, may seek the outrageous windfall of a free house and damages,
5   and in the process tie up his loan in litigation for years and impede legitimate enforcement
6   by the creditor, all while incurring essentially no litigation costs and living rent-free, yet
7   imposing significant expense on his creditor and the legal system—without any
8   consequences when he loses.  Indeed, the parties' contractual agreements in the Note and
9   Deed of Trust provide for an award of fees to BANA in precisely this scenario, and the
10  same result is indicated under A.R.S. § 12-341.01(A).  Accordingly, BANA submits that
11  an award of fees is contractually required and justified in this case.

12  **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.    FACTS AND PROCEDURAL HISTORY**

14          This was an unfortunate action brought by two home loan borrowers who, instead
15  of accepting BANA's repeated offers of loan assistance, engaged in scorched-earth
16  litigation against BANA (and BANA's counsel) to completely escape, or substantially
17  change, their contractual loan obligations.  Plaintiffs filed this case in March 2011, shortly
18  after being legitimately declined from the Home Affordable Modification Program
19  ("HAMP") because their income exceeded the program limits.  [*See* Dkt. 321 at 5]
20  Despite more than a year to take discovery, Plaintiffs failed to develop any evidence that
21  the determination of HAMP ineligibility was somehow wrongful.  Further, in March 2011,
22  Plaintiffs had been in default of their contractual loan obligations for six months; they had
23  intentionally skipped every loan payment due since October 2010.  [*Id.* at 2]  Instead of
24  paying what was owed to avoid foreclosure (at that time, a relatively small sum that they
25  indisputably were able to pay), they filed this lawsuit seeking an injunction against
26  foreclosure, and blaming BANA for "inducing" them to default.  [*Id.*]  Notably, while the
27  "inducement" was supposedly a false statement by a BANA banking center manager in
28  September 2010, Plaintiffs indisputably *disbelieved* that purported statement early in the

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   case.  No explanation was ever provided why Plaintiffs nevertheless continued skipping

2   payments and chose to sue BANA instead of paying what was owed—other than "efficient

3   breach" of contract.  [*Id.* at 2]

4        Rather than force all parties to incur fees and costs litigating, BANA immediately

5   stipulated to cancel the scheduled trustee's sale and work with Plaintiffs on a loan

6   modification.  [Dkt. 18]  This began a process that continued through September 2012 and

7   resulted in two loan modification offers to Plaintiffs, both of which were rejected (as

8   described in detail below).   During this time, Plaintiffs filed their First Amended

9   Complaint, which BANA moved to dismiss.  [Dkt. 45, 48]  That motion was granted in

10  part and denied in part.  [Dkt. 67]  Plaintiffs filed a Second Amended Complaint on

11  December 6, 2012, which BANA answered on February 15, 2013.  [Dkt. 69, 82]  Plaintiffs

12  filed their Third Amended Complaint on May 8, 2013.  [Dkt. 101]  BANA again moved to

13  dismiss, and the Court granted in part and denied in part that motion on July 10, 2013.

14  [Dkt. 108, 137]  Notably, the Third Amended Complaint consists of 118 pages (excluding

15  exhibits) and 708 separately-numbered paragraphs (excluding sub-paragraphs), evidencing

16  the abusive and burdensome nature of Plaintiffs' "kitchen sink" approach.  Yet Plaintiffs

17  never accounted for their central problem—they simply refused to make loan payments.

18       The nature of this litigation changed between March 2011 and the entry of

19  judgment, due to Plaintiffs' constantly injecting new frivolous issues into the case.

20  Initially, the case solely concerned alleged misrepresentations about HAMP and a

21  foreclosure being noticed in alleged violation of HAMP.  [*See* Dkt. 1]  For this, Plaintiffs

22  sought unspecified monetary damages and to block the foreclosure.  [*Id.*]  However, when

23  discovery commenced, it became apparent that Plaintiffs had no evidence of damages

24  associated with these allegations, or at best, minimal damages in the form of legal costs to

25  stop the foreclosure that could have been avoided simply by paying the amount then owed.

26  [Dkt. 321 at 8]  This case thus proceeded for nearly two years based on allegations for

27  which the damages were de minimus—essentially, Plaintiffs' filing fees for this lawsuit,

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1  which they indicated at their depositions likely did not exceed $1,000.   Yet Plaintiffs

2  refused to settle.

3      Instead, they began to focus extensively on their "Part II" allegations in the Third

4  Amended Complaint, which concerned conduct relating to Plaintiffs' inquisition about

5  loan modification terms that occurred in June through September 2012.   Suddenly, the

6  whole case became focused on enforcing supposed loan modification terms that were

7  never offered to Plaintiffs, even after Judge Bolton ruled in response to a motion to dismiss

8  that the supposed "modification" was *not* enforceable as a contract.   [Dkt. 137]   Plaintiffs

9  frivolously attempted to get the same result under tort and promissory estoppel theories, an

10  effort barred by applicable law.[1]   Plaintiffs even sought this "modification" under the

11  original HAMP allegations in "Part I" of the new complaint—indeed, by the time summary

12  judgment motions were briefed, this was the *only* relief sought under the HAMP

13  allegations.  [Dkt. 404 at 3]

14      Late in discovery, Plaintiffs further began injecting yet more new issues that

15  actually *contradicted* the complaint.  Plaintiffs began arguing that BANA was not their

16  "real" loan servicer and that BANA's principal, Federal National Mortgage Association

17  ("Fannie Mae"), was not the "real" owner of Plaintiffs' debt.  [*See* Dkt. 381 at 4; No. 1:14-

18  mc-00336 (D.D.C.), Dkt. 5]   This contradicted allegations in the Third Amended

19  Complaint.  [*Id.*; Dkt. 404 at 18-19]   Additionally, after discovery closed, Plaintiffs

20  asserted their "unfunded loan" claim, in an effort to get a *refund* of every payment ever

21  made on the loan and a judicial declaration that the loan was void and unenforceable going

22  forward.  [*See generally* Dkt. 352]   In other words, the case evolved from a relatively

23  straightforward action asking the Court to block a discrete foreclosure proceeding under

24  HAMP, to an effort to substantially change Plaintiffs' contractual loan obligations by

25

---

26  [1] *E.g.*, *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921 (4th Cir. 1984); *Twin*

27  *Fires Investment, LLC v. Morgan Stanley Dean Witter & Co.*, 837 N.E. 2d 1121 (Mass. 2005); *Restatement (Second) of Torts* § 549 cmt. 1 & ill. 7 (1977); *Restatement (Second) of*

28  *Contracts* § 90 & ill. 10 (1981).

4

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1  imposing a "modification" on BANA, to a final and absolutely frivolous effort to avoid

2  Plaintiffs' loan obligations altogether and get a completely free house.

3       Discovery and pre-trial preparation on these constantly evolving claims was

4  extensive.  As discovery commenced, Plaintiffs served more than 100 written discovery

5  requests, deposed BANA's corporate representative twice, took three non-party

6  depositions (one of which required the parties to travel to California), and subpoenaed

7  three non-parties for documents.  One of those non-party subpoenas resulted in satellite

8  litigation in the District of Columbia, which resulted in the non-party being ordered to

9  produce *one* document to Plaintiffs, which the non-party had already agreed to voluntarily

10  produce.  [*See generally* No. 1:14-mc-00336 (D.D.C.)]  In addition, Plaintiffs *three times*

11  moved for a determination that BANA had waived the attorney-client privilege, all of

12  which were denied  by the Court.  [*See* Dkt. 196 (raised for first time and denied during

13  discovery dispute conference with Court); 216 at 13 n.42 (raised for second time in motion

14  to disqualify counsel); 247 at 4 n.1 (denied for second time in order denying motion to

15  disqualify); 360 (raised for third time by motion); 367 (denied for third time)]

16       Plaintiffs also drove up costs and created delay by filing other frivolous motions

17  and papers on tangential issues:  a motion seeking the dispositive sanction of striking

18  BANA's answer before the parties had even commenced discovery (Dkt. 89, 107); a

19  motion to intervene and obtain discovery from an MDL proceeding in Massachusetts (Dkt.

20  124), which was an effort to evade Judge Bolton's rulings that certain materials were not

21  discoverable in this case; a motion to disqualify Bryan Cave as counsel (Dkt. 216); a

22  motion to vacate a settlement conference, based on blatant misrepresentations of the

23  factual record (Dkt. 296); an untimely "expert" report which attempted to inject new issues

24  into the case after the close of discovery (Dkt. 299); a motion to expunge a document from

25  the county land records (which relief was not even sought in the complaint) (Dkt. 301,

26  395); oppositions to motions to file a couple of excess pages in a summary judgment

27  motion (Dkt. 314); a 15-page "objection" to certain declaration testimony, which is

28  expressly prohibited by the Federal Rules (Dkt. 347); and a motion to strike supposedly

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   "untimely" disclosures made by BANA in response to Plaintiffs' own untimely disclosure

2   of their "unfunded loan" claim (Dkt. 421).  This was all done in an effort to substantially

3   change or avoid altogether Plaintiffs' loan obligations, which they could indisputably

4   honor, but simply refused to honor.

5       BANA attempted to defend this action as efficiently and inexpensively as possible,

6   which was difficult given the confusion created by Plaintiffs' voluminous, burdensome,

7   and abusive allegations, regular efforts to inject new issues into the case, and constant

8   filings with the Court.   BANA affirmatively deposed Plaintiffs and their purported

9   "expert" witness on the "unfunded loan" issue; served one round of written discovery; and

10  moved for summary judgment and to eliminate the "unfunded loan" claim.  Otherwise,

11  BANA's tasks consisted of responding to Plaintiffs' discovery and frivolous motions and

12  papers, and preparing to respond to the voluminous issues Plaintiffs intended to raise at

13  trial.  BANA did not undertake any tasks that were unnecessary or excessive.[2]   To the

14  contrary, because BANA limited its affirmative activities to the bare minimum necessary

15  to defend the case, Plaintiffs were largely in control of the time and expense required of

16  BANA, and by their choice of a "kitchen sink" approach to the litigation, determined for

17  themselves that BANA's fees would not be minimal.

18      To avoid all this, BANA attempted to settle this case from the beginning.  Within

19  three months of the case being filed, BANA offered Plaintiffs a loan modification.

20  Plaintiffs rejected that modification.   BANA immediately went to work on a *second*

21  modification review (which was Plaintiffs' fourth try, including the two times they were

22  reviewed and declined from HAMP pre-litigation), which culminated in a June 2012 trial

23  period invitation and a September 2012 permanent loan modification offer.   Plaintiffs

24  rejected that modification, too.  Instead, they tried to substantially change their contractual

25

_____

26  [2] For example, BANA reached an agreement with Plaintiffs to depose their damages expert

27  *after* the close of discovery and briefing of summary judgment motions to save costs, as
    BANA did not believe the expert's testimony would be relevant to the dispositive motions.

28  Ultimately, BANA never took the deposition.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1  loan obligations by litigating for a different "modification" that was never offered.  Even

2  after Judge Bolton dismissed their breach of contract claim, which sought enforcement of

3  this different "modification," Plaintiffs continued seeking the same result under tort and

4  promissory estoppel theories, which was prohibited by applicable law.

5       Further, BANA repeatedly tried for a monetary settlement.  Unsuccessful in its

6  standalone efforts, BANA moved for an order directing the parties to mediate, which

7  Plaintiffs inexplicably opposed.  As forecasted by their opposition to the very concept of

8  mediating, the settlement conference before Judge Logan failed when Plaintiffs walked out

9  of the conference early in the day.[3]  Later, when BANA implored Plaintiffs to reconsider

10  settlement approximately 60 days before trial, Plaintiffs incredibly refused to negotiate

11  with BANA unless BANA *first* gave them free and clear title to their house (which would

12  have required BANA to write off $300,000 of debt).  Plaintiffs' bad-faith approach to

13  settlement suggests that their true purpose in this case was not to resolve legitimate

14  grievances, but to tie up their loan in litigation for as long as possible so as to continue

15  living at their property for free and possibly reap a windfall at trial.

16  **II.    ARGUMENT**

17       **A.    Eligibility**

18       The Court's local rules require BANA to identify the judgment it incurred fees to

19  obtain, and discuss the legal authorities under which BANA is eligible for an award of fees

20  given the nature of the action.  LR Civ 54.2(c)(1).  BANA seeks the fees it incurred

21  obtaining a complete victory on Plaintiffs' pleaded causes of action, elimination of the

22  frivolous and un-pleaded "unfunded loan" claim, and entry of a final summary judgment in

23  its favor dismissing this action with prejudice.  [*See* Dkt. 431, 432]  As set forth above in

24  detail, Plaintiffs sought in this action to completely evade, or substantially change, their

---

26  [3] Out of respect for the settlement conference process, BANA will not at this time disclose

27  the substance of the parties' negotiations or the amounts involved, but will willingly
    submit that information, under seal if necessary, upon request if the Court deems it

28  material to granting this motion.

contractual loan obligations.  They sought to void their loan obligations altogether and get a free house through their un-pleaded "unfunded loan" claim.  They also sought, through their allegations in both Part I and Part II of the Third Amended Complaint, to impose on BANA a substantial loan modification that BANA had never agreed to nor offered. Further, through their allegations in Part I, Plaintiffs sought to prevent BANA from enforcing its contractual rights through foreclosure by blaming their loan default on alleged misrepresentations of a BANA employee, arguing that HAMP prohibited BANA from seeking foreclosure, and claiming that BANA is not their "real" loan servicer and that BANA's principal, Fannie Mae, is not the "real" owner of the debt.  All of these efforts by Plaintiffs to evade or change their contractual obligations directly impaired BANA's contractual right to enforce Plaintiffs' loan obligations after Plaintiffs indisputably defaulted on the loan four years ago.  Because BANA prevailed on all claims, BANA now seeks its fees under two independent authorities: the contractual terms of Plaintiffs' Note and Deed and Trust, and A.R.S. § 12-341.01(A).

## 1. BANA is eligible for an award of fees under the contractual terms of the Note and Deed of Trust.

"A contractual provision for attorneys' fees will be enforced according to its terms. Unlike fees awarded under A.R.S. § 12-341.01(A), the court lacks discretion to refuse to award fees under the contractual provision." *Mining Investment Group LLC v. Roberts*, 217 Ariz. 635, 641, 177 P.3d 1207, 1213 (Ct. App. 2008) (quoting *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575, 880 P.2d 1109, 1121 (Ct. App. 1994)) (awarding fees to prevailing party under purchase contract).  Plaintiffs agreed in their Note and Deed of Trust to pay BANA's fees incurred enforcing the Note and Deed of Trust.  Paragraph six of the Note states:

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

. . . .

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.

. . . .

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, *the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.*

[Dkt. 311 (B. Siriwan Decl. (4/30/14)) ¶ 7, Ex. A § 6 (emphasis added)]

Section 1 of the Note specifies: "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  [*Id.*, Ex. A § 1]  As the servicer of the loan, BANA is entitled to receive payments under the Note.  [*Id.* ¶ 13]  BANA also is the holder of the Note, as it physically possesses the Note endorsed in blank.  [*Id.* ¶ 14]  Therefore, by the express terms of the Note, BANA is the Note Holder and has the right to recover "all of its costs and expenses in enforcing" the Note, including "reasonable attorneys' fees."

Further, the Deed of Trust states:

**1. Payment of Principal, Interest** . . . .  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument**.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property. . . *Lender's actions can include, but are not limited to:  . . . appearing in court; and [] paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument* . . . .

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, *for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees*, property inspection and valuation fees.  In regard to any other fees, the absence of express authority

1    in this Security Instrument to charge a specific fee to Borrower shall not be
     construed as a prohibition of the charging of such fee.

2    **22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to
     acceleration following Borrower's breach of any covenant or agreement in
3    this security instrument . . . *Lender shall be entitled to collect all expenses
     incurred in pursuing the remedies provided in this Section 22, including, but
4    not limited to, reasonable attorneys' fees* and costs of title evidence.

5    [*Id.*, Ex. B ¶¶ 1, 9, 14, 22 (emphases added)]

6        The Deed of Trust defines the term "Lender" as Preferred Home Mortgage

7    Company, and adds: "The covenants and agreements of this Security Instrument

8    shall . . . benefit the successors and assigns of Lender." [*Id.*, Ex. B ¶ (C) and ¶ 13]

9    BANA, as the loan servicer, was the agent and assignee of the Lender. [*Id.* ¶ 13]  Thus, as

10   the agent and assignee of the lender, BANA has the contractual right under the Deed of

11   Trust "to collect all expenses incurred in pursuing the remedies provided in" the Deed of

12   Trust, "including, but not limited to, reasonable attorneys' fees."

13       The fee-shifting provisions of the Note and Deed of Trust indisputably apply to this

14   case.  Through their "unfunded loan" claim, Plaintiffs sought to evade their contractual

15   obligations completely.  BANA was required to incur fees defeating that claim and

16   confirming its right to enforce the Note and Deed of Trust.  Also, the substantial relief

17   sought through both Parts I and II of the Third Amended Complaint was a significant loan

18   modification—in other words, Plaintiffs sought through this action to *change* the

19   obligations of the Note and Deed of Trust.  BANA was required to incur fees to defeat

20   those claims and enforce the Note and Deed of Trust as written and accepted by Plaintiffs.

21   Finally, Part I of the complaint sought to prohibit enforcement of the Deed of Trust

22   through foreclosure, for instance, by blaming Plaintiffs' loan default on alleged

23   misrepresentations of a BANA employee, and by asserting that HAMP prohibited

24   foreclosure.  Also in connection with these claims, Plaintiffs asserted that BANA was not

25   the "real" loan servicer and that Fannie Mae, BANA's principal, was not the "real" owner

26   of the debt.  BANA was required to incur fees to defeat all these claims and confirm the

27   legitimacy of its enforcement of the Note and Deed of Trust.  These are clearly the types of

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

claims and foreclosure avoidance tactics for which Plaintiffs agreed to be responsible in fees when they signed the Note and Deed of Trust.

        **2.    BANA is eligible for an award of fees under A.R.S. § 12-341.01(A).**

Arizona law provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Arizona courts have "broadly interpreted" the statutory term "arising out of a contract." *Marcus v. Fox*, 150 Ariz. 333, 334, 723 P.2d 682, 683 (1986) (en banc). A claim arises out of contract within the meaning of A.R.S. § 12-341.01 as long as a contract "was a factor in causing the dispute." *Id.* at 335. As set forth above, this was an action to prevent BANA from enforcing the terms of the Note and Deed of Trust. Thus, while express breach of contract claims formed only a portion of this litigation, the entire case has been an effort by Plaintiffs to avoid or change their contractual obligations under the Note and Deed of Trust, which falls squarely under the "arising out of a contract" standard of A.R.S. § 12-341.01(A).

**B.    Entitlement**

The Court's local rules require BANA to discuss the factors relevant to whether fees should be awarded. LR Civ 54.2(c)(2). Under the contractual terms of the Note and Deed of Trust, an award is *not* discretionary, so there are no factors warranting discussion. *Mining Investment Group LLC*, 217 Ariz.at 641, 177 P.3d at 1213. Unless the amount of fees incurred by BANA was "clearly excessive," BANA is "entitled to receive its full attorneys' fees." *McDowell Mountain Ranch Ass'n v. Simon*, 216 Ariz. 266, 270–71, 165 P.3d 667, 671–72 (Ct. App. 2007) (vacating award of partial fees). BANA has established the reasonableness of its fees through the declaration of Sean K. McElenney. Plaintiffs cannot demonstrate that the fees incurred by BANA were "clearly excessive."

Under the alternative, discretionary standard of A.R.S. § 12-341.01(A), the Court should consider "the merits of the unsuccessful party's claim, whether the claim could have been avoided or settled, whether the successful party's efforts were completely

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1    superfluous in achieving the result, whether assessing fees against the unsuccessful party

2    would cause an extreme hardship, whether the successful party did not prevail with respect

3    to all of the relief sought, the novelty of the legal question presented, and whether an

4    award to the prevailing party would discourage other parties with tenable claims from

5    litigating legitimate contract issues for fear of incurring liability for substantial amounts of

6    attorneys' fees." *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, 155 P.3d

7    1090, 1093 (Ct. App. 2007) (affirming trial court's award of fees).  These factors should be

8    weighed in light of the purpose of the statute.  "Because the statute provides that an award

9    of fees should be made to mitigate the burden of litigation, the clear intent of the statute is

10   that under ordinary circumstances the successful party in an action which falls under the

11   statute is entitled to recover his reasonable attorney's fees." *Grand Real Estate, Inc. v.*

12   *Sirignano*, 139 Ariz. 8, 14, 676 P.2d 642, 648 (Ct. App. 1983) (vacating trial court's denial

13   of request for fees).

14        These factors favor an award of fees.  Plaintiffs' claims were meritless.  Their

15   "unfunded loan" claim was frivolous and the evidence was "overwhelmingly one-sided."

16   [Dkt. 431 at 10]  Their claims about Fannie Mae, HAMP, and the bank manager Jason

17   Marsh were unsupported by the evidence, which should have been apparent to Plaintiffs

18   early on in the case—and Plaintiffs had "damages" that, at best, did not exceed $1,000.

19   While there were factual questions surrounding the communications between counsel and

20   Plaintiffs alleged in Part II, the *damages* Plaintiffs sought based on those allegations were

21   plainly unavailable under existing law.   BANA fully and voluntarily compensated

22   Plaintiffs for the *actual* damages recoverable if they prevailed on those allegations, by

23   returning the three trial payments.  Following their pattern, Plaintiffs rejected that tender.

24        BANA made multiple efforts to settle the claims, including two loan modification

25   offers, monetary offers, and entreaties to continue settlement discussions 60 days before

26   trial.  Plaintiffs rebuffed BANA's overtures.  Plaintiffs are solely responsible for the case

27   not settling.  Accordingly, BANA's efforts were not superfluous in achieving victory; all

28   of BANA's efforts were necessary to defeat all of the relief sought by Plaintiffs.

1    There is no evidence that assessing fees against Plaintiffs would cause an extreme
2    hardship.  Plaintiffs saved more than $77,000 by not paying their loan for the past four
3    years.  They testified unequivocally that they have that money available.  [Dkt. 321 at 2]
4    BANA notes that the Arizona Court of Appeals has affirmed fee awards against parties in
5    less than stellar financial condition.  *See Catalina Foothills Ass'n Inc. v. White*, 132 Ariz.
6    427, 429, 646 P.2d 312, 314 (Ct. App. 1982) (affirming award of fees against party who
7    had only $8000 in assets and was a "voluntary organization serving a worthwhile
8    purpose").

9    This case did not present any novel questions, nor would an award of fees here
10   discourage other parties from litigating legitimate contract claims.  Rather, an award of
11   fees would send an appropriate cautionary message to home loan borrowers and the
12   foreclosure defense bar.  Borrowers cannot intentionally skip their loan payments for four
13   years, impede the creditor's enforcement rights by typing up the loan in litigation, and not
14   expect to suffer some consequences after losing.  Because borrowers in these cases often
15   (like here) appear pro se, and often (like here) obtain stipulated injunctions due to the
16   creditor's desire to achieve an amicable workout resolution and legitimate fear of litigation
17   uncertainty, the borrower has nothing to lose, and everything to gain, by keeping meritless
18   claims alive in the courts as long as possible.  The Court should not encourage this
19   behavior.  Borrowers should be required to assess whether they have a legitimate defense
20   to payment before so engaging the courts.  Plaintiffs here did not pursue legitimate
21   defenses.  They skipped every payment intentionally because it was "economically
22   efficient" to do so, not because of misconduct by the bank.  If a borrower wants to skip his
23   payments, he can do that, but the fair result in that scenario is loss of the property—not an
24   expensive exercise in scorched-earth litigation, while the borrower lives rent-free.  In the
25   vast majority of cases, the only thing that may discourage a borrower from pursuing that
26   course is the prospect of an award of fees.

27

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

## C.   Reasonableness Of Requested Award

The Court's local rules require BANA to discuss, "as appropriate," various enumerated factors "bearing on the reasonableness of the requested attorneys' fee award." LR Civ 54.2(c)(3) (factors listed as A-M).  Many of these factors are discussed above and in the declaration of Sean K. McElenney.  In addition, BANA notes the following.

Much of the time and labor (*see* factor (A)) expended in this case was necessitated by the conduct of Plaintiffs in refusing to engage in good-faith settlement discussions and by driving up costs through filing excessive motions, as detailed above in Part I.   In addition, as should be amply clear from the summary judgment briefing and the 708-paragraph complaint, Plaintiffs raised numerous loan servicing issues and complaints, many of which were frivolous and based on speculation that was contrary to the sworn testimony of the witnesses.  Instead of choosing a reasonable number of strong issues or abandoning issues that were clearly unfounded in the record, Plaintiffs took a "kitchen sink" approach necessitating extensive responses and legal and factual research by BANA that should not have been necessary.  BANA also notes that much time and labor was unnecessarily expended preparing for the "unfunded loan" claim that was untimely disclosed after the close of discovery.

Time limitations (*see* factor (G)) also played some part in driving up the legal expense.  Plaintiffs delayed filing a response to BANA's summary judgment motion on the pretext that more time was required, but in reality, Plaintiffs used their extra time to prepare and file several of the frivolous motions and other papers discussed in Part I.  [*See* Dkt. 347, 348, 360]  As a result of the delay in the summary judgment briefing, BANA presumes there was a corresponding delay in receiving a ruling, during which time BANA incurred costs preparing the "unfunded loan" claim and additionally preparing for trial, including expenses for a jury consultant.  Had the parties received a ruling sooner, and farther from the trial date, those expenses may have been avoided.  Instead, Plaintiffs sought extension after extension that they misused to enable frivolous filings with the Court.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

The value of the case (*see* factor (H)) is discussed in Mr. McElenney's declaration, but bears noting briefly here.  BANA did not see this case as having a particularly high intrinsic value based on the merits.  That is why BANA made numerous efforts to resolve the case, including returning the three trial payments to Plaintiffs, making loan modification offers, and making monetary offers, all of which were rebuffed and not met with reasonable negotiation or counteroffer by Plaintiffs.  But Plaintiffs disclosed that they would seek compensatory and punitive damages nearing $1,000,000, and their demand, though meritless, was based at least nominally on a real computation by an "expert" accountant, the "value" of Plaintiffs' time, and a punitive damages multiplier, all of which could have foreseeably been presented to a jury—in other words, this was not a typical pie-in-the-sky pro se foreclosure defense case.  In addition, Plaintiffs sought the return of all payments ever made on this loan, a declaration voiding the Note and Deed of Trust, and significant changes to their loan obligations as discussed above.  Plaintiffs also sought to publish at trial certain false, prejudicial, and disparaging allegations about BANA made in other lawsuits across the country in support of their punitive damage claim.   The reputational risk, potential monetary exposure before a jury, and risk to loan enforcement rights, coupled with Plaintiffs' intransigence as to settlement, justified and necessitated BANA's expense in defending this matter.

## Relief Requested

Defendants respectfully request that the Court award BANA its reasonable attorneys' fees in the amount of $202,716.40.

1    DATED this 23rd day of October, 2014.

2                                        BRYAN CAVE LLP

3                                        By: s/ Gregory B. Iannelli
                                              Sean K. McElenney
4                                             Gregory B. Iannelli
5                                             Two North Central Avenue, Suite 2200
                                              Phoenix, Arizona 85004-4406
6
7                                        Attorneys for Defendants Bank of America,
                                         N.A., individually and as successor by merger
8                                        to BAC Home Loans Servicing, LP and
                                         Bryan Cave LLP
9
10   Filed electronically with the Court and
     served on counsel of record by the Court's
11   CM/ECF system this 23rd day of October,
12   2014.
13
14      s/ Gregory B. Iannelli
15
16   768042
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000