UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Rich, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CV-11-00511-PHX-DLR |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | August 25, 2014 |
| BAC Home Loans Servicing L.P., | ) | 3:00 p.m. |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |


BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE


Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003-2151
(602) 322-7261

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                          A P P E A R A N C E S

2    For the Plaintiffs:

3                   By:  JUDITH M. RICH
                         VINCENT VITALE, ESQ.
4                   42505 West Candyland Place
                    Maricopa, AZ  85138-3142
5

6    For the Defendants:

7                   BRYAN CAVE LLP
                    By: MR. GREG IANNELLI, ESQ.
8                   Two North Central Avenue, Suite 2200
                    Phoenix, AZ  85004-4406

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

P R O C E E D I N G S

1

2          COURTROOM DEPUTY:  Civil case number 11-511, Rich and

3    others versus BAC Home Loan Servicing LP and others, on for

4    status conference.

5          Please announce for the record.

6          MR. VITALE:  I am plaintiff, Vincent Vitale.

7          MS. RICH:  Plaintiff, Judith M. Rich R-I-C-H.

8          MR. IANNELLI:  Good afternoon, Your Honor.  Greg

9    Iannelli for Brian Cave and the Bank of America defendants.

10          THE COURT:  Okay.  Good afternoon.  This is time for

11    status conference.  What's the status?

12          MR. IANNELLI:  Your Honor, we initially requested the

13    status conference in relation to issues surrounding the

14    disclosure of expert reports by the plaintiffs.

15          By way of a little bit of background for the Court, on

16    April 14th of this year, which was 6 months past the deadline

17    to disclose expert reports, we received --

18          THE COURT:  I have read your motion in limine and

19    their response, so --

20          MR. IANNELLI:  Okay.  Then I will just skip to the

21    request for today's conference.  At the time we requested it,

22    which is about a month ago now, the plaintiff had submitted in

23    response to the motion in limine a declaration from the expert,

24    Ms. Estrada, that disclosed new opinions that were not in the

25    prior expert report.

1          In addition to that, there were statements made by the

2     plaintiffs at the deposition of the expert to the affect that

3     additional new declarations with additional new opinions would

4     be submitted in response to our motion for summary judgment.

5          So we sought the Court's guidelines by moving for the

6     status conference that discovery was closed.  That no

7     forthcoming expert opinions should be permitted beyond what was

8     disclosed in the Rule 26 report.

9          Since that time, due to the rescheduling of the

10    conference because of Mrs. Rich's health situation, the summary

11    judgment briefing has been completed.  It turns out that the

12    promised new declaration was never submitted, so that issue is

13    no longer one of concern unless for some reason something new

14    were to be submitted out of time.

15         So the only issue now in relation to the untimeliness

16    of the expert disclosures is this new declaration that was

17    submitted by Ms. Estrada in support of the plaintiff's response

18    to the motion in limine seeking to exclude her opinions.

19         And it is our position, Your Honor, that this is -- it

20    is an untimely disclosure of new opinions that don't appear in

21    the Rule 26 report, which was itself six months untimely.

22         And so we would seek the Court's guidelines as to

23    whether this is a document that we need to respond to, and just

24    to give plaintiffs instruction that no new expert opinion

25    should be disclosed at this point in the case, which is now, I

1    think, less than 90 days before trial in November.

2         THE COURT:  We've got a jury trial set on November

3    2nd?

4         MR. IANNELLI:  Correct.

5         THE COURT:  And this is going to a jury?

6         MR. IANNELLI:  Yes, Your Honor.

7         THE COURT:  Okay.  What was the discovery cut-off

8    date?

9         MR. IANNELLI:  It was April 1st.

10         THE COURT:  Okay.  Thank you.

11         Mr. Vitale, do you want to respond or Ms. Rich?

12         MR. VITALE:  Yes, I will be responding, Your Honor.

13    As to the declaration referenced by Mr. Iannelli, that's a

14    three-page declaration submitted directly in response to the

15    declaration filed by Mr. Iannelli in the response to the motion

16    for summary judgment.  So they raised factual issues and we

17    rebutted them through a declaration.

18         THE COURT:  So these are affidavits or declarations

19    that are connected to the motions for summary judgment?

20         MR. VITALE:  Yes, the declaration to which

21    Mr. Iannelli refers is the three-page point by point rebuttal

22    of his affidavit.

23         THE COURT:  Okay.  Well, I guess those can be

24    addressed at the time of the motion for summary judgment in the

25    form of a motion to strike.  If that's what you -- if that's

1    what that is.

2         MR. IANNELLI:  No, Your Honor, it is not.  And I

3    can -- I don't know that I have the actual docket entry of the

4    affidavit, but the affidavit we are talking about was

5    submitted, not in response to anything that I filed.  It was in

6    response to the motion to exclude --

7         THE COURT:  I think Mr. Vitale just had a sudden

8    thought on that.

9         MR. VITALE:  Mr. Iannelli is correct.  We actually

10   filed it in connection with a different motion, but referenced

11   it in the motion for summary judgment.  But nonetheless was

12   referred -- was filed as a rebuttal to a declaration filed by

13   Mr. Iannelli.

14        THE COURT:  And what is it?

15        MR. VITALE:  It is a three-page declaration from our

16   witness.  It's a point-by-point rebuttal as to the different

17   documents identified in the declaration of Mr. Iannelli.

18        THE COURT:  So what he's saying is it's your expert

19   witness who is giving a rebuttal stating opinions which haven't

20   previously been disclosed.

21        MR. VITALE:  Documents about which she is testifying

22   hasn't been disclosed either.

23        THE COURT:  Okay.  Well, there's no opinions there

24   being disclosed past the discovery cut-off.  We put it in

25   place.  If you need extra time, you file a motion before the

1    deadline expires and bring it to my attention.  The deadline

2    expired four months ago.

3              MR. VITALE:  As noted in part in our memorandum, Your

4    Honor, we didn't get the documents that we needed until March

5    19th.  As a result of Judge Bolton's order compelling them to

6    provide discovery.

7              THE COURT:  And then that should have been brought to

8    my attention so we could have move the discovery cut-off.  The

9    discovery cut-off is still set.  It hasn't been changed.

10             MR. VITALE:  Well, the scheduling order says that the

11   Court may or may not prevent the use of the documents, but what

12   I can do is file a motion to extend the scheduling order to

13   accommodate what's already been filed, the witness has been

14   been deposed, the report has been gone over in great detail.

15             THE COURT:  This is Mr. Estrada?

16             MR. VITALE:  Yes.

17             THE COURT:  And he has been deposed?

18             MR. VITALE:  She has, for four and a half hours.

19             THE COURT:  But there's apparently opinions that

20   weren't disclosed in the deposition that are coming up now.  I

21   think that's what I am hearing the concern about; is that

22   right?

23             MR. VITALE:  He is referencing the three-page

24   declaration rebuttal.

25             THE COURT:  You are not going to bring in opinions

1    that weren't disclosed in a deposition.  Okay?  Anything that

2    wasn't disclose either in a form of disclosure or in a

3    deposition, this close to trial, is not happening.

4          MR. VITALE:  As to the report filing of April 15th, I

5    believe, it might have been April 11th, do we need to file a

6    motion to allow that to be utilized?  Or is the fact that the

7    --

8          THE COURT:  If he was deposed, if you guys stipulated

9    behind my back essentially to continue discovery, then I am not

10   going to step back and pull that away from you.  If it is

11   disclosed and he has been deposed, then it is fair game.

12         But things that come up after that deposition, which

13   weren't disclosed in the deposition, is not fair game.  That

14   would require him to have to go back and redepose him.  I am

15   not going to have him do that.

16         MR. VITALE:  Thank you.  Now, when we are done with

17   this issue, I have a couple of housekeeping questions for the

18   Court.  If this is a proper time to ask them.

19         THE COURT:  Yes, let's take care of everything we can

20   while we are here.  Hang on a second.  Are you satisfied -- did

21   I address the issue you raised?  Is that resolved?

22         MR. IANNELLI:  Yes, Your Honor, it is.  Thank you.

23         THE COURT:  Go ahead.

24         MR. VITALE:  The first question is, the presentation

25   of two witnesses who are represented by Brian Cave.  One is an

1    attorney on their staff, Coree Neumeyer, and the other is a

2    former Bank of America employee named Courtney Jarmarillo, who

3    resides in Southern California.

4         My question is this, both of us are calling them as

5    witnesses.  Can I get assurances at this time that Bank of

6    America will in fact present both witnesses, or do I need to

7    subpoena them?  It is an issue because Ms. Jaramillo resides in

8    California and it could take a number of weeks to get her here.

9    So can the Court enter an order upon stipulation that they will

10   present them at trial so that they can be called as witnesses.

11        THE COURT:  Mr. Iannelli?

12        MR. IANNELLI:  Unfortunately, this issue wasn't

13   brought to my attention before right now.  I am not prepared

14   right now to say or not say what witnesses the bank intends to

15   call at trial.  Especially given that all these claims are

16   still pending to summary judgment motions.  So I can't enter

17   that stipulation today.

18        THE COURT:  So it sounds like he is not going to

19   stipulate to it.

20        MR. VITALE:  Well, the secondary solution to the

21   problem is, will they at least agree to accept the subpoenas

22   for service for presence, since they represent both parties?

23        THE COURT:  Let me just be -- I want you to respond to

24   that, but let me tell you, these are the kind of things you

25   guys talk about before you come and talk to me.  This is not

1    the kind of thing that takes up the Court's time, things that

2    you guys can deal with separately before coming to me or issues

3    you should be talking about.  You should be communicating about

4    these things.

5            Having said that, what's your response to that?

6            MR. IANNELLI:  Yeah, Your Honor, again, I am just

7    not -- we are talking about a person who is no longer even an

8    employee of the bank, so I actually have no authority to accept

9    the service of a subpoena.

10           MR. VITALE:  The other question I have for the Court

11   relates to the filing of the jury instructions.  When we file

12   the jury instructions, does the Court want each instruction as

13   a separate document, or does the Court want it as one composite

14   document?

15           THE COURT:  Michelle, what's easiest for you?

16           COURTROOM DEPUTY:  I don't actually deal with that.

17           THE COURT:  Okay.  Let's do separate for each

18   instruction because we will go over them separately.

19           MR. VITALE:  And as to the boilerplate instructions

20   from the 9th Circuit, duty of the jury, that sort of thing, do

21   you want those just cited, or do you want each document to have

22   the actual language.

23           THE COURT:  Just cited.  You are talking about the

24   standard jury instructions?

25           MR. VITALE:  Yes, I am.

1          THE COURT:  We don't need to have those printed up for

2    us.

3          MR. VITALE:  If I may just have one moment, Your

4    Honor, to see if I missed anything?

5          THE COURT:  Okay.  No.

6          MR. VITALE:  No that covers it.

7          THE COURT:  Now we had this motion in limine on the

8    unfunded loan issue.  Are we going to talk about that today?

9          MR. VITALE:  I am prepared to address it, if the Court

10   desires.

11         MR. IANNELLI:  I am prepared as well, Your Honor, if

12   your Honor would like to address it.

13         THE COURT:  Well, first of all, let me ask Mr. Vitale,

14   explain how this issue -- I don't see any cases cited on this,

15   and I am not familiar with this unfunded loan defense.

16         The house was paid for.  You moved in.  What wasn't

17   funded?

18         MR. VITALE:  No money was ever, under our theory of

19   the case, the mortgage company never paid the builder.  There

20   is no loan.

21         THE COURT:  So are you going to bring the builder in

22   to testify to that?

23         MR. VITALE:  No, our expert has already explained how

24   the loan couldn't have happened.  As an example, Your Honor --

25         THE COURT:  Well, wait a minute.  That just doesn't

1    make common sense.  Why would the builder let you take the

2    house if it wasn't paid?

3            MR. VITALE:  The testimony from the witness,

4    Ms. Estrada, and review of the documents show that the mortgage

5    company, the builder, the financing company all have the same

6    address.  The builder was Sunbelt, owned by a company called

7    Tusa, is in Chapter 11 Bankruptcy in Florida.

8            We don't know what happened, but here is what we do

9    know.  There's no documenting evidence whatsoever demonstrating

10   that any electronic fund transfer was made.  There's no

11   documentation of any check cashed, any transfer of funds from

12   Preferred Mortgage to the builder.  And we address that in some

13   detail in the summary judgment motion, citing a number of

14   cases.

15           THE COURT:  Okay.  I haven't read the summary judgment

16   motion yet, but is that -- is the unfunded loan issue an

17   argument that's raised in the motion for summary judgment?

18           MR. VITALE:  Yes, that's briefed extensively.

19           THE COURT:  Well, okay.  Then that may give me a

20   better chance to understand what you are saying then, if it is

21   briefed and you have got that.  All right.  So sounds like it

22   is something that needs to be resolved in the summary judgment

23   motion as opposed to in a motion in limine.

24           MR. IANNELLI:  Your Honor, I disagree with that.  We

25   filed a separate motion in limine on this issue to which the

1     plaintiffs filed their response.  That issue has now been fully

2     briefed for more than a month.

3            The plaintiffs elected, for some reason I don't

4     understand, to file what was essentially a second response to

5     our motion in limine in their summary judgment response.

6            So we didn't raise this issue at all in our summary

7     judgment briefing.  Our argument is that this is a theory that

8     bears no relevance to anything, in addition to the fact that

9     the witness, they have chosen to espouse the theory is

10    completely unqualified as an expert to address these sort of

11    issues as I think Your Honor has just suggested.

12           So I think this issue is ripe for decision as soon as

13    the Court has had time to read the briefing of the motion in

14    limine.  The fact that the plaintiffs --

15           THE COURT:  I have read it.  What's your -- what you

16    are arguing is that it should be excluded from evidence.  And

17    my position is, if it is not relevant, it should be excluded

18    from evidence, but I don't know how I determine if it is

19    irrelevant if I haven't read the motions for summary judgment.

20           THE COURT:  Well, I think the Court can determine that

21    just based on what's alleged in the complaint and the causes of

22    action that are going to be tried.

23           There are basically two sets of allegations in the

24    complaint.  One of them relates to conduct by the bank or

25    alleged conduct in 2010 and 2011, where Mr. Vitale and

1    Mrs. Rich claim that they were misled as to the requirements of

2    a federal loan modification program.  So that's part one of

3    their complaint.

4         Part two of their complaint relates to conduct that

5    occurred years later after this case was already in litigation

6    and there were communications between someone from our law firm

7    and the plaintiffs about terms they might expect could be

8    offered by the bank if they participated in a different loan

9    modification program, which they contend are fraudulent.  Those

10   are the -- that's the --

11        THE COURT:  Their theories don't involve unfunded

12   loan?

13        MR. IANNELLI:  It is nowhere in the complaint, Your

14   Honor.  There's nothing in the complaint that, for instance,

15   seeks to invalidate the Bank of America's security interest,

16   prevent the bank from foreclosing, none of that is in there.

17        None of this was part of the case until after the

18   close of discovery when Ms. Estrada disclosed this report.  So

19   that's why we think that the Court can address it now on a

20   simple relevance standard, because, one, it is not even in the

21   complaint.  It is not within the issues that have been agreed

22   to be tried by the parties.

23        But even if it were, for the extensive reasons we put

24   in our motion, it is not relevant to any of those things.

25   Because whether or not their builder got money from some third

1    party who is not even before the Court, has no bearing on

2    whether the promissory note that the plaintiff signed to pay

3    their lender in exchange for that property is a valid and

4    legitimate obligation.

5         They got the property.  Their obligation to pay the

6    purchase price to the builder was satisfied.  The builder

7    hasn't sued them for that money.  So any argument that there's

8    some lack of consideration there is just completely absurd.

9         So we don't think it's a valid issue.  We don't think

10   it is a valid defense.  And if this were to come in at trial,

11   we would have to call in -- because Bank of America was not the

12   lender here.  We acquired this loan --

13        THE COURT:  I understand that.

14        MR. IANNELLI:  We would have to bring in the builder.

15   We would bring in the title company, all of those entities are

16   out of state, some of them are in bankruptcy and receivership.

17   I mean, this whole concept will needlessly expand the length of

18   the trial.

19        And we would hope that we could get a ruling from the

20   Court on the issues sooner rather than later so that we can

21   understand what the scope of this trial is going to be going

22   into it.  Because it is going to be vastly different if this is

23   part of the case or not part of the case.

24        THE COURT:  All right.  Mr. Vitale, my first question

25   is, what consideration did you contract for when you entered

1    into the loan agreement?

2           MR. VITALE:  We contracted with Preferred Mortgage

3    under the following terms:  They would pay the builder

4    $257,000.

5           THE COURT:  So that the builder would allow you to

6    move into the house and own the house.

7           MR. VITALE:  Right.  And they did not pay the builder.

8           THE COURT:  Did you move in and did you own the house?

9           MR. VITALE:  We did move in; we have title of the

10   house.  However --

11          THE COURT:  So does it matter to you whether there was

12   a payment from the lender or whether the lender and the builder

13   agreed that because of some other reason the lender would never

14   have to pay it, as long as you got into the house and owned it.

15          MR. VITALE:  We have addresses that with very specific

16   case citations in our summary judgment pleadings, Your Honor.

17   But, yes, under the restatement, I can't tell you from memory

18   the provision.  If A promises B that I will give money to C on

19   your behalf in exchange for a note, and they don't give money

20   to C, the note fails for want of consideration.  And it is the

21   want of consideration that underlies the unfunded loan issue.

22   But as I said, I briefed it very carefully.

23          THE COURT:  I think your hypothetical misses one of

24   the things, and C promises to give A something in exchange.  In

25   your case, you got what you -- what ultimately you were seeking

1    to get, wasn't it, the house?  Did you care --

2              MR. VITALE:  We got the house from the builder, but we

3    did not get the house from Bank of America -- Preferred

4    Mortgage.

5              THE COURT:  I will take a look at the motion for

6    summary judgment.  I will rule on the motion in limine.

7              MR. VITALE:  I have another point on the motion in

8    limine.

9              THE COURT:  After we've reviewed the motion for

10   summary judgment, and I have a better -- because I really don't

11   understand your theory here and how that makes a difference.

12             MR. VITALE:  I would like to address two other points,

13   not on the summary judgment but on the motion in limine.

14             THE COURT:  Well, if it is something that you should

15   have talked to him about before, then you go talk to him and

16   bring it to me later.

17             MR. VITALE:  No, I am talking about the merits of the

18   motion, not procedural issues or housekeeping matters.

19             THE COURT:  All right.

20             MR. VITALE:  The Court in Washington has already ruled

21   on the relevance issue, and I will cite specifically.

22             THE COURT:  The Court in Washington?

23             MR. VITALE:  Yes, Washington DC, Judge Lambert in the

24   discovery motions that were pending before him.

25             THE COURT:  Oh, okay.

1        MR. VITALE:  Here's -- allow me just to read two

2    paragraphs to you.  What we said in our memorandum at Docket

3    10, Page 6 was as follows:  Fannie May's ownership of

4    plaintiffs' loan is relevant or is likely to lead to relevant

5    evidence supporting plaintiffs' contention that Bank of America

6    could not modify plaintiffs' loan.

7        According to the April 11th report of plaintiffs'

8    expert witness Cyndee Rae Estrada, plaintiffs' loan never

9    funded, therefore, there's no loan to modify.  In response,

10   this is what the judge had to say -- and this is at docket 10,

11   page -- excuse me, docket 15, page 8.

12       The particular document plaintiff seek is obviously

13   relevant.  The ownership of plaintiffs' note is disputed, and

14   the transfer of that note to Fannie May bears directly on some

15   of plaintiffs' claims.  Therefore, The Court will modify

16   plaintiffs' subpoena so that it only requests the document --

17   the documents from Fannie May, sufficient to show what third

18   party tranferred plaintiffs' loan to Fannie Mae and on what

19   date transfer occurred.

20       These are all linked together.  Because the bank is

21   claiming that it is a holder in due course and therefore can

22   enforce the note.  We are saying, the note was not supported by

23   consideration, and, furthermore, you are not a holder in due

24   course.

25       THE COURT:  I think I see what you are saying.

1          MR. VITALE:  Thank you.

2          THE COURT:  So I am not going to rule on this now.  I

3     am going to have to review the motions for summary judgment and

4     the cases cited in there that talk about this theory of

5     unfunded loan.  So I have a better understanding of what it is

6     that you are arguing.  Because like I said right now, I don't

7     have a good understanding of that.

8          MR. VITALE:  May I have just a moment, Your Honor?

9          THE COURT:  Okay.

10         MR. VITALE:  No, Your Honor, that conclude our request

11    to the Court.

12         THE COURT:  Okay.  Now we have our final pretrial

13    conference on November 3rd.

14         MR. VITALE:  Yes.

15         THE COURT:  The motion for summary judgment will be

16    ruled on before that obviously.  But when we come back -- well,

17    first of all, we have nothing else scheduled before November

18    3rd, do we?

19         MR. VITALE:  There's an October 27th pretrial

20    conference, I believe, or something on October 27th, I can't

21    recall what it is.

22         COURTROOM DEPUTY:  Joint proposed pretrial order is

23    due.

24         THE COURT:  That's when your order is due for the --

25    your joint preposed pretrial order.  Again, that's going to

1    require you guys to communicate and get together and come up

2    with a proposed order.

3            But we are not coming back until November 3rd.  I will

4    have a ruling out on the motion for summary judgment before

5    that, and at the time I rule on motion for summary judgment, I

6    will also rule on this motion in limine.

7            MR. VITALE:  Your Honor, I did want to alert the Court

8    to one other issue, which is, we do intend to be represented by

9    counsel at trial.  Counsel is not fully up to speed yet, but

10   will be, will not impact the trial date.  But we will be

11   represented by an attorney during the trial proceedings.  We

12   will not be proceeding pro se at that time.

13           THE COURT:  Okay.  That's good.  But keep in mind we

14   are not going to continue the trial so he has a chance to get

15   up to speed.

16           MR. VITALE:  No, that's been an ongoing process.

17           THE COURT:  I didn't think that was your intention,

18   but I just want to remind you of that.  Who is your lawyer

19   going to be?

20           MR. VITALE:  Attorney Beth Vincent.  She has

21   represented us at the depositions and some time in the next few

22   weeks she will be able to enter an appearance and take over

23   responsibility for the management of the case.

24           THE COURT:  Okay.  Well you haven't done a bad job

25   yourself.  Are you a lawyer?

1            MR. VITALE:  Yes, Your Honor.

2            THE COURT:  Okay.  So we will see you guys on November

3    3rd?

4            MR. IANNELLI:  Thank you.

5            THE COURT:  Anything else?

6            MR. IANNELLI:  No, Your Honor.

7            THE COURT:  Okay.  We will stand in recess.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3           I, ELVA CRUZ-LAUER, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6           I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11          DATED at Phoenix, Arizona, this 11th day of November,

12   2014.

13

14                                      s/Elva Cruz-Lauer
                                  Elva Cruz-Lauer, RMR, CRR
15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**