BRYAN CAVE LLP (No. 00145700)
Sean K. McElenney (No. 016987)
Gregory B. Iannelli (No. 026549)
Two North Central Avenue, Suite 2200
Phoenix, AZ  85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
skmcelenney@bryancave.com
gregory.iannelli@bryancave.com

Attorneys for Defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP and Bryan Cave LLP

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Judith M. Rich; Vincent P. Vitale, | No. 2:11-cv-00511-DLR |
| Plaintiffs, | Hon. Douglas L. Rayes |
| vs. | |
| Bank of America, N.A., a national Bank and Bank of America, N.A., successor in interest to BAC Home Loans Servicing, LP, et al., | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, BY DEFENDANT BANK OF AMERICA, N.A.**

Plaintiffs' Response exemplifies why fees should be awarded in this case. It exceeds the page limit, is replete with untrue statements of fact, and asserts frivolous arguments unsupported by citation to legal authority. It relies on the fact that the case survived dismissal to establish that the case was well-grounded in facts, and repeatedly restates the complaint's scandalous allegations as if they were true, but ignores that these allegations were proven *false* (or never evidenced by Plaintiffs) on summary judgment. These kinds of excessive papers, and Plaintiffs' wilful blindness toward the law and the facts, needlessly prolonged this litigation and unnecessarily inflated its cost.

Most egregiously, hoping to establish that the case was not worth $200,000, Plaintiffs falsely represent to this Court the terms on which BANA could have settled the case, and the amount of damages Plaintiffs were seeking. Plaintiffs now tell the Court that it is "incorrect" that "Plaintiffs were claiming over $1,000,000.00 in damages." [Dkt. 448 at 6; Dkt. 448-1 ¶ 54] But on March 31, 2014, Plaintiffs disclosed they would seek at trial a total sum exceeding $1.2 million. [Decl. of Gregory B. Iannelli (12/2/14) ("Counsel Decl."), Ex. A] Plaintiffs are actively misleading the Court.

The same is true with respect to settlement. Mr. Vitale tells the Court that BANA could have settled by "just giv[ing] us a proprietary loan on the terms we were promised"—i.e., the $83,000 principal reduction. [Dkt. 448-1 ¶ 3-A] But on June 20, 2013 (before incurring $200,000 in fees), Mr. Iannelli wrote to Mr. Vitale suggesting just that, *plus* some additional amount of money. [Counsel Decl., Ex. B] Plaintiffs responded that settlement discussions were "premature." [*Id.*] Mr. Iannelli repeated his invitation on July 10, 2013, after the Court ruled on BANA's motion to dismiss. [*Id.*, Ex. C] Plaintiffs never responded. [*Id.* ¶ 4]

When Plaintiffs were finally forced to make a settlement demand when Judge Bolton ordered them to participate in mediation, Plaintiffs demanded that BANA either (1) give them a completely free house (according to Mr. Vitale, a value of $155,000, and from BANA's perspective of the amounts due under the Note, more than $300,000), and also pay them $275,000 in cash, or (2) pay them $750,000 in exchange for an uncontested

2

foreclosure of the property. [*Id.* ¶ 5] Later, Plaintiffs pre-conditioned further negotiations on BANA giving them a free house in advance. [*Id.* ¶ 6; Dkt. 448-1 ¶ 53]

Plaintiffs' misrepresentation of this record is inexcusable. Their suggestion (at 4, 6, Dkt. 448-1 ¶ 3-A) that BANA could have settled the case by giving them an $83,000 principal reduction, the $18,000 discounted present value of the reduction, or the $144,000 assessed by their expert is false and purposefully misleading. In reality, Plaintiffs made it impossible for BANA to settle for anything close to $200,000. BANA's significant fees and costs are the direct result of Plaintiffs' disregard for the facts and the law, despite BANA's numerous requests for reason—and that pattern and approach is repeated in their Response. Plaintiffs should bear BANA's costs.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BANA IS CONTRACTUALLY ENTITLED TO FEES.

#### A. BANA Did Not Waive Its Contractual Fee Entitlement.

To be clear, BANA *did* demand attorneys' fees in its Answer. [Dkt. 155 at 55] Plaintiffs make the hyper-technical argument (at 10-11) that BANA *also* should have pled the specific contracts under which it seeks fees. Plaintiffs primarily rely (at 10) on two Arizona state cases, setting forth the procedure for requesting fees in Arizona state court. But in federal court, "the procedure for requesting an award of attorney fees is governed by federal law," not state law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). The Ninth Circuit "specifically rejected the argument that [a fee claim] must be raised in the pleadings" in *Riordan v. State Farm Mutual Auto. Ins. Co.*, 589 F.3d 999, 1005 (9th Cir. 2009) (affirming award of fees).

Federal law requires fees to be asserted in a pleading only when "the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). Plaintiffs fail to cite any case holding that Rule 54(d)(2)(A) governs a prevailing party's entitlement to post-judgment fee shifting. Nor have Plaintiffs cited any case holding that, even where it does apply, Rule 54(d)(2)(A) requires fees to be pleaded at

3

the level of *specificity* demanded by Plaintiffs—i.e., by specifically identifying in the prayer the contracts under which fees are sought.[1]

Plaintiffs' argument is even less credible under Local Rule 54.2, which sets forth in excruciating detail the procedure for requesting fees in this District. The rule provides that the movant "must specify the judgment and cite the applicable statutory *or contractual authority* upon which the movant seeks an award of attorneys' fees." LRCiv 54.2(c)(1) (emphasis added). Thus, Local Rule 54.2 specifically provides that a prevailing party may seek fees under contractual authority by filing a post-judgment motion, not a pleading.[2]

The out-of-circuit federal cases cited (at 11 n.12) are distinguishable for three reasons. First, these cases hold only that fees must be demanded in a pleading (which BANA did), *not* that the pleader must specifically identify contracts under which he seeks fees. Second, each one held that attorneys' fees are items of special damage, a proposition the Ninth Circuit rejects. *Riordan*, 589 F.3d at 1004-05. Third, all of these cases but one predate the 1993 amendments to Rule 54, which created a *post-judgment* procedure for requesting fees. The sole exception, *United Industries*, supports BANA because it holds that when fees are sought under a contract, the claim for fees need *not* be pleaded.[3]

Finally, Plaintiffs have not been prejudiced because Plaintiffs *attached* the Note and Deed of Trust to their own complaint. [Dkt. 101-1 at 1-18] BANA further proved on summary judgment that it has standing to invoke the contracts. [Dkt. 311 ¶¶ 14, 15] Plaintiffs cannot credibly argue that they lacked notice of the possibility of a contractual fee award, so the purpose of a pleading has been satisfied. *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1272 (11th Cir. 2000) (affirming fee award; "although Finnegan did not seek attorneys' fees in its pleadings, the contract was in evidence and expressly

---

[1] Also notable is that federal law provides that a judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

[2] The local rules also provide that the Court may allow discovery and an evidentiary hearing on fees, leaving Plaintiffs no basis to claim they were prejudiced by not having the relevant contracts specifically identified in the pleadings. *See* LRCiv 54.2(g) & (h).

[3] *United Indus., Inc. v. Simon Hartley, Ltd.*, 91 F.3d 762, 765 n.4 (5th Cir. 1996)

provided for attorneys' fees for the prevailing party"). Arizona courts have affirmed awards under similar facts. *See All Points Towing v. City of Glendale*, 153 Ariz. 115, 119, 735 P.2d 145, 149 (Ct. App. 1987) ("When there has been substantial compliance with the local rules, an award of attorney's fees will not be vacated"); *Prendergast v. City of Tempe*, 143 Ariz. 14, 22, 691 P.2d 726, 734 (Ct. App. 1984) (affirming fees despite procedural violation because fee claim neither "surprised nor . . . prejudiced" defendant).

### B.     A.R.S. § 33-814(G) Does Not Prohibit A Fee Judgment.

A judgment for fees is not a "deficiency judgment" under Arizona's anti-deficiency statute, A.R.S. § 33-814(G). A.R.S. § 33-814(G) is intended to protect borrowers from personal liability "for the balance of the purchase price" after loss of real property at a trustee's sale, not to protect borrowers from a fee award after pursuing unmeritorious litigation. *Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988). Also, the statute is intended "to discourage land sales that are unsound" by shifting the risk of loss to the lender, who is more competent to value real property than a typical consumer home purchaser. *Id.* at 103, 770 P.2d at 771; *M&I Bank, FSB v. Coughlin*, 805 F. Supp. 2d 858, 864 (D. Ariz. 2011) (statute shifts to the lender "the risk of lending more money than what the residence is worth"). Declining to award fees will not further that purpose.

On these grounds, the California Court of Appeal rejected Plaintiffs' argument:

> Enforcement of the judgment for attorney's fees and costs is not simply a subterfuge for the collection of a deficiency on the secured note. The award for attorney's fees and costs is neither measured by, nor interrelated to, a deficiency on the note. Such an award is not attributable to a general condition of the real estate market, but is the result of the debtor-trustor's voluntary act in bringing an unmeritorious suit which the creditor-beneficiary was required to make expenditures to defend. The judgment for attorney's fees and costs is entirely independent of the problems encompassed by antideficiency legislation and the enforcement of such a judgment will not affect the parity of remedies such legislation is intended to foster.

*Passanisi v. Merit-McBride Realtors, Inc.*, 190 Cal. App. 3d 1496, 1509, 236 Cal. Rptr. 59 (Ct. App. 1987) (affirming award). The Arizona Supreme Court has heavily relied on California authority when interpreting A.R.S. § 33-814(G), as should this Court. *Baker*, 160 Ariz. at 102, 770 P.2d at 770.

5

The only authority Plaintiffs cite for their argument is an unpublished order from this District, *Martenson v. R.G. Financing*, No. 09-cv-01314, 2011 WL 855639 (D. Ariz. Mar. 10, 2011). Notably, in *Martenson*, the parties neither briefed nor argued A.R.S. § 33-814(G), and *Martenson* fails to account for the purposes of the statute or look to California law for guidance as directed by the Arizona Supreme Court. Further, in *Martenson*, a trustee's sale had already occurred when the defendant sought fees. That at least made invocation of the statute procedurally correct, as the statute applies "[i]f trust property . . . *is sold*." A.R.S. § 33-814(G) (emphasis added). Here, the trust property has *not* been sold.

### C. This Case Falls Under The Contractual Fee Provisions.

Plaintiffs argue (at 12, 13), without citing facts or authority, that BANA may not invoke the Note and Deed of Trust because it was not the "Note Holder" and "not a party to the Deed of Trust." BANA disproved both arguments on summary judgment. [Dkt. 311 ¶¶ 13-15] Plaintiffs also argue (at 12), without citing authority, that the contractual fee-shifting provisions do not apply because "BANA did not sue to enforce the Note." But many courts have awarded fees to the lender for *defending* claims like Plaintiffs' under identical promissory note language.[4] Plaintiffs also argue (at 13, 15) that the fee provisions do not apply because BANA did not seek to "protect title" in this action or pursue its remedies under the Deed of Trust. This ignores that Plaintiffs moved to "vacate" an assignment of the Deed of Trust, that Plaintiffs sought a judicial declaration that the Deed of Trust was "invalid," and that BANA needed to resolve the loan

---

[4] *E.g., Jimenez v. Suntrust Mortgage, Inc.*, No. 5:13-cv-04615, 2014 WL 3945836 (N.D. Cal. Aug. 11, 2014) (fraud, good faith and fair dealing, consumer protection statute); *Hines v. Wells Fargo Bank, N.A.*, No. H-13-167, 2014 WL 897805 (S.D. Tex. Mar. 6, 2014) (fraud, infliction of emotional distress, TILA, RESPA, "and other miscellaneous violations"); *Myers v. Regions Mortgage*, No. 12-3040, 2013 WL 5965761 (W.D. Tenn. Nov. 7, 2013) (consumer protection statute and FDCPA); *Mustapha v. HSBC Bank, USA*, No. 4:12-cv-01924, 2013 WL 2338198 (S.D. Tex. May 28, 2013) (various claims); *Dufour v. Nationstar Mortgage LLC*, No. 12-cv-1579, 2012 WL 5868964 (D. Ariz. Nov. 12, 2012) (request to declare note and mortgage void); *Whittle v. Wells Fargo Bank, N.A.*, No. CV F 10-0429, 2010 WL 1854110, at *5 (E.D. Cal. May 6, 2010) ("With this action pending, Wells Fargo's foreclosure attempts were stymied").

modification claims before foreclosing, because BANA promised not to foreclose until Plaintiffs had been reviewed for all available modification options. [*See* Dkt. 301; Counsel Decl., Ex. D; Dkt. 20]

## II.     THIS CASE ARISES OUT OF CONTRACT UNDER A.R.S. § 12-341.01.

To determine whether a claim arises out of contract, the Court looks to the essence of the claim, not the label affixed in the pleadings. *Marcus v. Fox*, 150 Ariz. 333, 335, 723 P.2d 682, 684 (1986) ("Regardless of the form of the pleadings, this court will look to the nature of the action and the surrounding circumstances"). *See also Shetter v. Rochelle*, 2 Ariz. App. 358, 366, 409 P.2d 74, 82 (Ct. App. 1965) ("this court does not believe that a label placed upon a cause of action has any great significance").

### 1.   The "unfunded loan" claim was an explicit claim to avoid a contractual obligation.

Unbelievably, Plaintiffs argue (at 8, 15, 16) that the "unfunded loan claim" was not "an affirmative claim to evade contract." But Mr. Vitale told BANA that he would seek at trial "an order declaring the Preferred Home Mortgage Company note and deed of trust to be invalid" and a refund of all his Note payments. [Counsel Decl., Ex. D] He subsequently argued that he was seeking to evade his obligation to pay BANA. [Counsel Decl., Ex. E at 17:14-24] This theory cannot arise under the FDCPA, as Plaintiffs now argue, because voiding a promissory note is not relief that is available under the FDCPA. *See* 15 U.S.C. § 1692a-o. The essence of this claim was contractual, which Plaintiffs recognized by arguing that "the note fails for want of consideration." [Counsel Decl., Ex. E at 16:21-22]

### 2.   Plaintiffs' tort and promissory estoppel claims arose out of contract.

Although Plaintiffs asserted claims under the labels of tort and promissory estoppel, this was a contract action in its nature and circumstances. The factual essence of the action was that BANA failed to honor its alleged promise to modify the loan. [Dkt. 101 ¶ 363 et seq.] Plaintiffs sought "benefit of the bargain" damages measured by their

7

"deal" with BANA. [*E.g.*, Dkt. 381 at 4 ("Plaintiffs' damages are the loss of the benefit of the bargain"); Counsel Decl., Ex. E at 12 ("they won't honor the terms of the deal"); *id.* at 18 (agreeing with the Court's characterization that "there's a loan modification and they're not living up to their end of the deal")] This case indisputably was one to recover a contractual benefit; Plaintiffs never proved an injury independent of the loss of the desired contractual benefit. Tellingly, in the complaint, Plaintiffs grouped all of their contract, tort, and promissory estoppel theories *together* under the heading, "Breach of the July 25, 2012 TPP Contract," and sought contract damages under all theories. [Dkt. 101 at 64; *id.* ¶¶ 501, 502]

Where, as here, the alleged contract "prompted this suit and also served as the basis for [plaintiffs'] claim," A.R.S. § 12-341.01 applies. *Marcus*, 150 Ariz. at 334-35, 723 P.2d at 684-85. A plaintiff cannot avoid fee liability by the formal expediency of dressing up his request for bargain-based, contractual expectation damages in the language of tort and promissory estoppel.

The tort and promissory estoppel claims also arose out contract for a second reason. This entire action was an effort by Plaintiffs to establish an excuse or justification for their breach of the Note and Deed of Trust, whether by asserting a violation of HAMP, a misleading statement by a bank employee, that the Note had been subsequently modified, or that the loan was "unfunded." In fact, Plaintiffs argued that by keeping this litigation going, they prevented foreclosure by keeping the March 2011 stipulated injunction in place. [Counsel Decl., Ex. F at 155:13-22, 156:14-22] Indeed, in the Response, Plaintiffs argue (at 6) that "the parties were litigating over a house," confirming their view that the purpose of the case was to change or eliminate their contractual obligations with respect to the house. This case thus arose out of the Note and Deed of Trust. The case also arose out of the Note and Deed of Trust because the duties BANA allegedly breached derived from the parties' contractual relationship. The negligent misrepresentation claim could not have been brought but for the existence of the Note. *See Restatement (Second) of Torts* § 552 (1977) (claim requires existence of business relationship between the parties). Similarly,

8

the alleged fraud concerned a modification of the Note.  These contracts were not peripheral or in the background of the dispute—they were central to it.

### 3. The tort and promissory estoppel claims were "intertwined" with explicit contract claims.

A.R.S. § 12-341.01 provides for fees incurred litigating non-contract claims that are "intertwined" with a contract claim.  *City of Cottonwood v. James L. Fann Contracting Inc.*, 179 Ariz. 185, 195, 877 P.2d 284, 294 (Ct. App. 1994) (court has "significant discretion" to award fees for intertwined claims).  "[O]ne claim for relief may involve related legal theories," such that "much of counsel's time may be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  *Modular Mining Sys. Inc. v. Jigsaw Tech. Inc.*, 221 Ariz. 515, ¶ 23, 212 P.3d 853, 860 (Ct. App. 2009) (quoting *Schweiger v. China Doll Restaurants Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (Ct. App. 1983)).  When the plaintiff's claims involve a "common core of facts" and are "based on related legal theories," the Court should focus on the "overall relief obtained" by the prevailing party and award "a fully compensatory fee . . . encompasss[ing] all hours reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (quoted with approval in *Schweiger* and *Modular Mining*).

Regardless of whether the tort and promissory estoppel claims independently arose out of a contract, A.R.S. § 12-341.01 still applies because those claims were intertwined with explicit contract claims.  Plaintiffs admit (at 15) that they pled two contract claims and that "[l]ittle, if any, work was done on the contract action that differed from the other five statutory and common law claims."  This is an admission that the claims were intertwined.  There was but one claim for relief in this case, a claim for contractual expectation damages.  While Plaintiffs asserted multiple legal theories to recover those damages, the theories were all related, the facts underlying each were identical, they "required the same factual development and research work" as the explicit contract claims, and "all depositions and all other work related to discovery and disclosure were necessary in connection with [all] claims."  *Modular Mining*, 221 Ariz. at ¶ 24.  In a similar case,

9

*McAlister v. Citibank*, 171 Ariz. 207, 216, 829 P.2d 1253, 1262 (Ct. App. 1992), the Court of Appeals allowed fees to the prevailing defendant where the plaintiff asserted that the failure to comply with an alleged agreement constituted either a breach of contract, fraud, constructive fraud, breach of fiduciary duty, or negligent misrepresentation.

### 4. BANA has never argued that this is not a contract action.

Whether or not this case arises out of a contract has never previously been presented to the Court. Plaintiffs nevertheless argue (at 5) that counsel took a different position on the question, quoting two statements out of context. The first was made during a discovery dispute conference in which Plaintiffs sought production of the original of the Note. Counsel stated that there is no claim in this case challenging BANA's "authority" to collect or hold a foreclosure. That is not inconsistent with the position taken in the fee motion. BANA does not argue here that this case arises out of contract because BANA's *authority* was challenged. Rather, it arises out of contract because Plaintiffs asserted a single claim for contractual expectation damages and sought to prevent enforcement of the Deed of Trust through foreclosure. The second statement was made during a status conference concerning the "unfunded loan" claim. Counsel's point here was merely that no claim to invalidate the Note and Deed of Trust was *pleaded in the complaint*. Certainly, however, Plaintiffs expressed their intention to pursue such a claim at trial, necessitating BANA's expense of fees to eliminate the claim and prepare to defend it if necessary.

### B. Fees Are Available For The Statutory Claims.

Contrary to Plaintiffs' argument (at 16-18), the foregoing considerations apply equally to the FDCPA and CFA claims. The availability of fees *under those statutes* is not relevant because BANA does not seek fees under the statutes. Fees are available under the Note and Deed of Trust and A.R.S. § 12-341.01, as set forth above. Courts have awarded fees for such claims for the same reasons cited here. *E.g.*, *Myers*, No. 12-3040, 2013 WL 5965761 (FDCPA, state statute); *Jimenez*, No. 5:13-cv-04615, 2014 WL 3945836 (state statute).

### C. BANA's Fees Are Reasonable And Well-Documented.

Plaintiffs have not submitted any evidence rebutting Mr. McElenney's declaration on the reasonableness of the fees. Instead, they argue that the "prevailing Phoenix rates on this kind of matter" are lower than counsel's. *Dufour v. Nationstar Mortgage LLC*, No. 12-cv-1579, 2012 WL 5868964, at *1 (D. Ariz. Nov. 12, 2012) (cited at 19). *Dufour* was a basic "show me the note" case that was resolved on an uncontested motion to dismiss, and provides no guidance on the reasonableness of the fees in *this* case. *See also Mustapha*, No. 4:12-cv-01924, 2013 WL 2338198 (approving rates of $275 to $400 per hour).

Plaintiffs also argue (at 4) that BANA "overworked" the file, "strung along" the litigation, and made "expensive choices." They try to evidence these broad statements with a few examples, but their examples all are false. They first say (at 4, 7) that BANA engaged "six attorneys" in Bryan Cave's Washington, D.C. office to fight a subpoena. But only *one* Washington attorney participated in this case, and he billed only $830. And non-party Fannie Mae, *not BANA*, was the subject of the subpoena and decided to oppose in its home jurisdiction. Fannie Mae was never a party to this case and had no reason to submit itself to the jurisdiction of an unfamiliar court. [*See also* Dkt. 448-1, Ex. 4 (email from Mr. Iannelli indicating that *Fannie Mae* opposed transfer of matter to Arizona)]

Plaintiffs next argue (at 8-9) that BANA made it "unreasonably burdensome" for them to depose Courtney Jaramillo. How this relates to the fee motion is not explained. BANA has already refuted these false, irrelevant charges (see Dkt. 226 at 15 n.6). Plaintiffs similarly argue (at 9), also without explaining how it relates to a fee award, that BANA misled them about the location of their original Note. This argument illustrates exactly the sort of frivolous, counter-factual positions taken by Plaintiffs that drove up the cost of this litigation. BANA's Rule 30(b)(6) witness specifically debunked this argument at his deposition. [*Compare* Counsel Decl., Ex. G at 122:1-123:22 *with* Dkt. 448-1 ¶ 31] His testimony was never rebutted. Yet Plaintiffs continue making these false arguments to the Court.

1     Plaintiffs also repeatedly refer to the "ten lawyers" who worked on this case. But no lawyer other than Mr. McElenney and Mr. Iannelli billed more than $1,500. Clearly, this file was not used as a ten-lawyer billing bonanza.

    Nor do Plaintiffs refute *any* of the examples BANA gave of Plaintiffs' excessive, kitchen-sink tactics. Instead, they argue (at 6-7) that there was "no scorched earth litigation" because the parties cooperated on extensions of time while BANA was reviewing Plaintiffs for a loan modification. This is true but irrelevant, because BANA is not seeking fees incurred during the time period described by Plaintiffs. BANA is seeking fees incurred *after* these efforts to settle failed.

    They also say (at 2, 5) that they filed this case only because BANA "refused" to voluntarily stop a foreclosure while Plaintiffs were being reviewed for a loan modification. This too is false. Plaintiffs swore in their interrogatory responses that BANA told them the foreclosure "would definitely be postponed" until the review was completed. [Counsel Decl., Ex. H] Plaintiffs also ignore that, instead of filing a lawsuit, they could have just paid the amount then indisputably owed, which was less than $4,000.

    Plaintiffs argue that BANA's fees are not appropriately documented because the itemized task list does not segregate fees by claim. This is exactly the sort of segregation that courts recognize is not required when claims are intertwined, as set forth above. Plaintiffs also argue that "the defendants are not segregated." But BANA paid or is liable to pay *all* of the fees sought on the itemized task list, so all of the fees should be awarded.

    Finally, Mrs. Rich has submitted a declaration addressing Plaintiffs' finances. The declaration, however, fails to say that Plaintiffs would be unable to pay a fee judgment, and in any event, the Response does not argue that payment of a fee judgment would cause an undue financial hardship, so any such argument is waived.[5]

---

[5] BANA notes that Mr. Vitale makes a number of arguments in his declaration that do not appear in the actual Response and all such arguments are waived. The declaration is too verbose for a point-by-point response; BANA objects to paragraphs 2-5, 7, 21, 23, 25, 27, 29, 31- 36, 38- 43, 47-49, 51, 52, 54, 59, 61-63, and 66-69 of the declaration on the basis that they lack foundation and constitute arguments rather than recitations of fact. BANA

DATED this 2nd day of December, 2014.

BRYAN CAVE LLP

By: s/ Gregory B. Iannelli
Sean K. McElenney
Gregory B. Iannelli
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406

Attorneys for Defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP and Bryan Cave LLP

Filed electronically with the Court and served on counsel of record by the Court's CM/ECF system this 2nd day of December, 2014.

s/ Mary Ann Villa

769372

also objects to Mr. Vitale's unfounded personal attacks on counsel, which were another repeated theme in this case inflating the costs.

13